1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    RENE MEDINA,                              Case No.  3:17-cv-03293 CRB

9              Plaintiff,
                                               **ORDER DENYING DEFENDANTS'**
10        v.                                   **MOTION TO DISMISS AND**
                                               **GRANTING PLAINTIFF'S MOTION**
11   XAVIER BECERRA, in his official           **FOR PRELIMINARY INJUNCTION**
     capacity as ATTORNEY GENERAL of
12   the STATE of CALIFORNIA, WAYNE
     QUINT, JR., in his official capacity as
13   the CHIEF of the CALIFORNIA
     DEPARTMENT OF JUSTICE,
14   BUREAU of GAMBLING CONTROL,
     an agency of the STATE of
15   CALIFORNIA, and JIM EVANS,
     LAUREN HAMMOND, and, TRANG
16   TO, in their official capacities as
     members of the CALIFORNIA
17   GAMBLING COMMISSION, an agency
     of the STATE of CALIFORNIA, and
18   DOES ONE through FIFTY, inclusive.,

19              Defendants.

20

21        Plaintiff Rene Medina ("Medina") has brought suit against several defendants

22   whom he alleges have interfered with his constitutional rights in violation of 42 U.S.C. §

23   1983.  The source of Medina's alleged constitutional deprivations are license conditions

24   imposed by the California Gambling Control Commission (the "Commission") on Lucky

25   Chances Casino ("Lucky Chances" or the "Casino"), a gambling establishment founded by

26   Medina and currently owned by Medina's two sons.[1]  The license conditions require Lucky

27   _____

28   [1] Throughout this Order the Court will refer to Lucky Chances and its owners collectively as
     "Lucky Chances" or the "Casino."

United States District Court
Northern District of California

Chances to restrict Medina's involvement with the Casino and its employees because of Medina's status as a convicted felon. Medina alleges that the Commission has unlawfully exceeded the bounds of its jurisdiction and asks for a preliminary injunction against the defendants. Defendants have moved for dismissal.

As discussed below, the Court DENIES Defendants' Motion to Dismiss and GRANTS Plaintiff's Motion for Preliminary Injunction.

## I.       BACKGROUND

### A.       Plaintiff's Background

Rene Medina emigrated from the Philippines in 1971 and has since founded several businesses in the San Francisco Bay Area. Compl. (dkt. 1) ¶¶ 12, 15; Medina Decl. (dkt. 10-1) ¶¶ 2–6.[2] In 1998, Medina founded Lucky Chances Casino in Colma, California. Compl. ¶ 15; Medina Decl. ¶ 15. In 2007, he sold the casino to his two sons, Ruell Medina and Rommel Medina, for $48,000,000, subject to a promissory note. Compl. ¶ 18; Medina Decl. ¶ 28.

In 2008, Medina was convicted of three counts of felony tax evasion in violation of 26 U.S.C. § 7201. Compl. ¶ 19; Medina Decl. ¶ 32. Because of his felony convictions, Medina is "disqualified" under the California Gambling Control Act from holding an ownership interest in any gambling facility. Compl. ¶ 20; Medina Decl. ¶ 34; see Cal. Bus. & Prof. Code § 19859(c). As a result, Medina transferred the promissory note in the Casino, which he and his wife previously held personally, to the Rene and Mila Medina 2008 Irrevocable Blind Trust Agreement.[3] Compl. ¶ 21; see Medina Decl. ¶¶ 29–30.

---

[2] To the extent that this Order addresses Defendants' Motion to Dismiss, it relies on the facts alleged in the Complaint, its exhibits, see Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), and any facts outside the Complaint subject to judicial notice, see Mullis v. U.S. Bankruptcy Court, 828 F.2d 1385, 1388 (9th Cir. 1987). To the extent that this Order addresses Medina's Motion for Preliminary Injunction, it relies on the parties' filings and declarations and exhibits attached thereto.

[3] Marino D. Gueco is the trustee of that trust. Pursuant to the terms of the promissory note, Ruell Medina and Rommel Medina pay the Trust $600,000 per quarter. The Commission approved the purchase and sale agreement, the establishment of the trust, and the ongoing quarterly payment schedule to the Trust. Compl. ¶¶ 21–22.

**B.     October 8, 2009 Renewal of Lucky Chances Casino's State Gambling License**

On October 8, 2009, the Commission renewed all applicable state gambling licenses for Lucky Chances, subject to the following conditions ("2009 License Conditions"):[4]

1.  Rene Medina shall be prohibited from entering, being present in, or in any way patronizing (a) the areas within Lucky Chances Casino in which controlled gambling is conducted and (b) any other areas related to the gambling operation, such as count and surveillance rooms, including all of the 2nd floor.

2.  All future shareholders, corporate officers, key employees, and work permit holders shall be informed of the prohibition (as identified in condition number one) by the General Manager within three business days of their start state. The General Manager shall maintain all records documenting this notification to new employees, etc., for four years following each notification. The General Manager of Lucky Chances shall maintain, for four years, all records documenting the initial action taken following the September 23, 2008, Commission Meeting to inform shareholders, corporate officers, key employees, and work permit holders of condition number one.

3.  Ruell Medina and Rommel Medina, licensed as shareholders in Lucky Chances, Inc., shall each be individually responsible for ensuring that all conditions placed on the Lucky Chances license are fully complied with, including but not limited to duties placed upon the General Manager.

4.  If Rene Medina is observed at any time by any employee entering, or being present in, (a) the areas within Lucky Chances Casino in which controlled gambling is conducted or (2) [sic] any other areas related to the gambling operation, such as count and surveillance rooms, including all of the 2nd floor, the General Manager or manager in charge shall within 30 minutes telephone (1) the California Gambling Control Commission (Commission), and (2) the Department of Justice, Bureau of Gambling Control (Bureau). The call to the Commission shall be made to the Executive Director at (916) 263-0700. The call to the Bureau shall be made to the Bureau Chief at (916) 263-3408.

5.  Any communication between Rene Medina and any shareholder or employee of Lucky Chances concerning the operation of the Lucky Chances cardroom business shall be disclosed to the Executive Director and to the Bureau Chief within one business day of the communication. This disclosure requirement

---

[4] The Commission has the power, inter alia, to "[t]ake actions deemed to be reasonable to ensure that no ineligible, unqualified, disqualified, or unsuitable persons are associated with controlled gambling activities" and "that gambling activities take place only in suitable locations." Cal. Bus. & Prof. Code § 19824(d)–(e).

applies to both oral and written communications. This disclosure must be made in writing. The General Manager shall maintain records documenting each disclosure for four years following the disclosure.

Compl. ¶ 25; Medina Decl. ¶ 36. These conditions have remained in place continuously since October 8, 2009. Compl. ¶ 25; Medina Decl. ¶ 37.

**C.** **October 21, 2014 Investigation of Lucky Chances Casino by the Bureau of Gambling Control**

On October 21, 2014, Special Agents from the California Department of Justice, Bureau of Gambling Control (the "Bureau") conducted an unannounced compliance inspection of Lucky Chances. Compl. ¶ 27; see Compl. Ex. A (Investigation Report).[5] The Special Agents interviewed employees, imaged computers, and accessed documents during the inspection. Id. The focus of the Special Agents' investigation was to determine if there was any relationship between Lucky Chances' employees and the construction and maintenance of Rene Medina's personal residence in Woodside, California. Compl. ¶ 28; Investigation Report at 1–2.

Based on the information obtained during the inspection, Bureau Chief Wayne J. Quint, Jr. brought an Accusation before the Commission against Lucky Chances on August 12, 2015. Compl. ¶ 29; Compl. Ex. B (Accusation) ¶¶ 1–2.[6] The Accusation included two causes of action for violations of Lucky Chances Casino's license conditions.

The first cause of action alleged a violation of License Condition Five, which required "any communication between Rene Medina and any shareholder or employee of Lucky Chances concerning the operation of Lucky Chances cardroom business" to be disclosed to the Bureau. Accusation ¶ 3. The Accusation alleged that "[o]n multiple occasions in 2013 and 2014, Lucky Chances provided construction, landscaping, housekeeping, and other valuable services incident to the construction of Rene and his

---

[5] The Investigation Report is also attached to Medina's Motion for Preliminary Injunction. See Smith Decl. Ex. A (Investigation Report) (dkt. 10-2).

[6] The Accusation is also attached to Medina's Motion for Preliminary Injunction. See Smith Decl. Ex. B (Accusation) (dkt. 10-2).

United States District Court
Northern District of California

wife, Mila, Medina's home . . . The wages, salaries, and other costs incurred by Lucky Chances in connection with this work were paid from the operating funds of Lucky Chances, Inc., which, in turn, derived from the proceeds of controlled gambling activities." Id. Further, the Accusation alleged that, in order to schedule and coordinate these services, "Rene Medina communicated on numerous occasions with the employees and/or their supervisors." Id. The Accusation alleged that, because none of the communications between Rene Medina and Lucky Chances' employees were disclosed to the Bureau, each constituted a violation of License Condition Five. Id.

The second cause of action alleged a violation of License Condition Three, which provides that Ruell Medina and Rommel Medina are individually responsible for ensuring that Lucky Chances comply with all license conditions. Id. ¶ 4. The Accusation alleged that "[n]either Ruell Medina, nor Rommel Medina took any actions to ensure compliance with condition five of the Lucky Chances license," and thus violated condition three of the Lucky Chances license. Id.

The Accusation requested a revocation of Lucky Chances Casino's licenses and denial of Ruell Medina's and Rommel Medina's applications for renewal of their owner gambling licenses. Id. at 8.

### D. The Administrative Law Judge's September 16, 2016 Proposed Decision and Order

From August 1 through August 4, 2016, Administrative Law Judge ("ALJ") Kirk E. Miller held an evidentiary hearing regarding the Accusation. Compl. ¶ 33; Smith Decl. ¶ 5. On September 16, 2016, ALJ Miller issued his findings in a Proposed Decision and Order. Compl. ¶ 33; Smith Decl. ¶ 6; see Compl. Ex. C (Proposed Decision and Order).[7]

ALJ Miller's findings included the following: In 2013 and 2014, Rene Medina improperly used Lucky Chances employees to help design and build his new residence in

---

[7] The Proposed Decision and Order is also attached to Medina's Motion for Preliminary Injunction. See Smith Decl. Ex. C (Proposed Decision and Order) (dkt. 10-2).

5

Woodside, California.[8]  Proposed Decision and Order ¶¶ 14–17.  Either Lucky Chances'
facility manager, Lucky Chances' day-shift housekeeping and maintenance supervisor, or
Rene Medina himself would request employees to perform services "off-site"—sometimes
during regular work hours.  Id.  It was not uncommon for Lucky Chances' maintenance
employees to clock-in on the Kronos time keeping machine at the Casino and then leave to
work off-site for Rene Medina, without clocking-out.  Id. ¶ 15.  Because the employees did
not report their whereabouts, Lucky Chances compensated them for services performed for
Rene Medina.  Id. ¶¶ 15–16.  Moreover, employees helped Rene Medina order and
purchase materials at a discounted rate using Lucky Chances' wholesale license.  Id. ¶ 18.
The total value of labor, materials, and sales tax Rene Medina accrued was $244,923.85.
Id. ¶ 20.  He has since reimbursed the full amount to Lucky Chances.  See id.

Based on his findings, ALJ Miller recommended dismissal of the Accusation
against Lucky Chances.  Id. at 17.  ALJ Miller concluded that "the evidence did not
establish any material involvement by a disqualified person in Lucky Chances' gaming
operations"; that "[n]either Rommel Medina nor Ruell Medina had prior knowledge that
Lucky Chances had incurred expenses or provided services on Rene Medina's behalf"; that
"[t]he expenses incurred and services provided had nothing to do with the 'operation of the
card room business'"; and that the contacts with Rene Medina were not material to the
card room business.  Id. ¶¶ 32, 36, 42.  ALJ Miller concluded that "no disclosure to the
Bureau or the Commission was required."  Id. ¶ 42.

### E.     The Commission's February 9, 2017 Decision and Order

After receiving written arguments from both sides, the Commission ultimately
rejected ALJ Miller's Proposed Decision and Order and issued its February 9, 2017
Decision and Order, based on the Accusation.  Compl. ¶ 34; see Compl. Ex. D (Decision
and Order).[9]

---

[8] Rene Medina's address is alternatively referred to as 50 Valley Road, Atherton, California, or 50
Valley Court, Woodside, California—both of which identify the same location.  Accusation ¶ 3.

[9] The Decision and Order is also attached to Medina's Motion for Preliminary Injunction.  See

The Commission held that there was material involvement by a disqualified person with a licensed gambling operation, and the ownership or management thereof, in violation of Business & Professions Code § 19823(a)(2). Decision and Order at 26. As a result, the Commission suspended Lucky Chances' state gambling licenses for fourteen days, and ordered that, in lieu of the suspension, Lucky Chances could pay a monetary penalty of 50% of Lucky Chances' average daily gross gaming revenue. Id. at 30–31. The Commission also imposed the following new conditions ("2017 License Conditions") on Lucky Chances' gambling license:

1. Rene Medina shall be prohibited from entering, being present in, or in any way patronizing any areas on Lucky Chances' property.

2. All future shareholders, corporate officers, key employees, and work permit holders shall be informed of the prohibition (as identified in condition number one) by the General Manager within three business days of their start date and shall maintain a record of this notification while they are affiliated with the cardroom.

3. Ruell Medina and Rommel Medina, licensed as shareholders in Lucky Chances, Inc. shall each be individually responsible for ensuring that all conditions placed on the Lucky Chances license are fully complied with, including but not limited to duties placed upon the General Manager.

4. If Rene Medina is observed at any time by any employee entering, or being present in any areas of Lucky Chances' property, the General Manager or manager in charge shall within 30 minutes telephone (1) the California Gambling Control Commission (Commission) and (2) the Department of Justice, Bureau of Gambling Control (Bureau). The call to the Commission shall be made to the Executive Director at (916) 263-0700. The call to the Bureau shall be made to the Bureau Chief at (916) 227-2377.

5. Rene Medina shall not have any communication, directly or indirectly, with any employee or owner of Lucky Chances, except that Rene Medina may communicate with his immediate family members provided the communication does not relate to any part of [Lucky Chances'] business.

Medina Decl. Ex. B (Decision and Order) (dkt. 10-1); Smith Decl. Ex. H (Decision and Order) (dkt. 10-2).

United States District Court
Northern District of California

6.  Any communication between Rene Medina and any shareholder or employee of Lucky Chances concerning the operation of the Lucky Chances card room business shall be disclosed to the Executive Director and to the Bureau Chief within one business day of the communication. This disclosure requirement applies to both oral and written communications. This disclosure must be made in writing. The General Manager shall maintain records documenting each disclosure for four years following the disclosure.

Compl. ¶ 35; Decision and Order at 31–32 (emphasis added). On March 28, 2017, the Commission clarified that the new conditions "require the licensees to exclude Rene Medina from the entire property, including the non-gaming areas . . . the gift shop, restaurant, and common areas." Compl. ¶ 43; Compl. Ex. E (Letter).[10]

**F.      Litigation Brought by Rene Medina**

On June 7, 2017, Medina filed a Complaint in this Court seeking declaratory relief, and a preliminary and permanent injunction, against Defendants Xavier Becerra, in his official capacity as Attorney General of the State of California; Wayne Quint, Jr., in his official capacity as the Chief of the California Department of Justice, Bureau of Gambling Control; Jim Evans, Lauren Hammond, and Trang To, in their official capacities as members of the California Gambling Control Commission; and Does One through Fifty, inclusive. Compl. at 1. Medina's Complaint alleged the following seven Claims for Relief under 42 U.S.C. § 1983: (1) Violation of Procedural Due Process; (2) Violation of Substantive Due Process; (3) Violation of Equal Protection – Class of One; (4) Violation of Equal Protection – Selective Enforcement Based on Race and National Origin; (5) Violation of Equal Protection – Selective Restriction on Expressive Conduct; (6) Violation of First Amendment – Impermissible Regulation on Modes of Expression and Association; and (7) Violation of First Amendment – Prior Restraint of Protected Expression. Compl. at 13–16.

On June 16, 2017, Medina filed a Motion for Preliminary Injunction. On August 2, 2017, the Defendants filed a Motion to Dismiss.

---

[10] The Letter is also attached to Medina's Motion for Preliminary Injunction. See Smith Decl. Ex. I (Letter) (dkt. 10-2).

Lucky Chances has also challenged the Commission's Decision and Order—in Superior Court of California, County of Sacramento ("Superior Court"). One of Defendants' arguments for dismissal is that this Court should abstain until the Superior Court has issued a final ruling in that related case. A hearing for the Superior Court proceeding was held on the same day as this Court's motion hearing.

On October 6, 2017, this Court heard argument on both Defendants' Motion to Dismiss and Medina's Motion for Preliminary Injunction. The parties also provided updates on the Superior Court proceeding. Based on a careful consideration of the parties' submissions, the relevant law, and the arguments made at the motion hearing, this Court denied Defendants' Motion to Dismiss and granted Medina's Motion for Preliminary Injunction. This opinion provides the Court's reasoning.

## II.   DEFENDANTS' MOTION TO DISMISS

### A.   Legal Standard: Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserts that the complaint fails to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, a court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B.   Discussion: Motion to Dismiss

In their motion, Defendants argue that (1) this Court should abstain, (2) Defendants Evans, Hammond and To are entitled to judicial immunity from Medina's injunctive relief

claims, and (3) Medina fails to plead a plausible claim for relief.

### 1.    Abstention

The Defendants argue that this Court should abstain until a California state court has conducted a final review of the license conditions at dispute in this case.

Federal courts have an "unflagging obligation" to exercise their jurisdiction.  <u>See</u> <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976); <u>Miofsky v. Superior Court</u>, 703 F.2d 332, 338 (9th Cir. 1983).  Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it."  <u>Colorado River Water Conservation Dist</u>, 424 U.S. at 813 (quoting <u>County of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 188–89 (1959)). Defendants contend that an exception to this duty exists here based on the <u>Pullman</u> abstention doctrine.  Defs.' Mot. at 8 (dkt. 20-1).  Defendants also contend that this Court should abstain "given the important principles of federalism raised" by Medina's request for injunctive relief against state government officers.  <u>Id.</u> at 9–10. The Court holds that abstention is not warranted on these grounds.

### a.    October 6, 2017 Writ Proceeding

As a preliminary matter, Defendants have requested that the Court take judicial notice of the Petition for Writ of Administrative Mandamus that Lucky Chances filed in Superior Court.  Defs.' Mot. at 9; <u>see</u> Defs.' RJN, Ex. A (Superior Ct. Dkt) (dkt. 20-2); Defs.' RJN, Ex. B (Petition for Writ).  A court may take judicial notice when a fact "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2). Because the writ proceeding is a matter of public record whose accuracy is not in dispute, the Court GRANTS Defendants' Request for Judicial Notice.  <u>See</u> <u>Burbank–Glendale–</u> <u>Pasadena Airport Auth. v. City of Burbank</u>, 136 F.3d 1360, 1364 (9th Cir. 1998) (permitting judicial notice of filings in a related state court matter).

In the writ proceeding, Lucky Chances challenges the legality of the Commission's Decision and Order.  In its petition, Lucky Chances argues that the Commission's findings

were erroneous and unsupported, and that, in imposing additional conditions, it was "unfair and a violation of due process to hold Petitioners responsible for conduct that they cannot control." Petition for Writ at 4, 5. Further, Lucky Chances claims that the monetary penalty required to avoid suspension, amounting to approximately $750,000, is disproportionate to the alleged harm. Id. at 6. As part of its argument, Lucky Chances notes that the additional conditions are "a violation of a non-party's constitutional due process rights." Id. at 5. Medina is not a party to the writ proceeding.

On October 6, 2017, the Superior Court held a hearing on the Petition for Writ ("Writ Hearing")— the same day as the motion hearing in this Court ("Motion Hearing"). At the Motion Hearing, the parties informed this Court that the Superior Court had already issued a tentative ruling. This Court asked counsel for both parties to inform the Court, within five days of the Superior Court's ruling, of the status of the writ proceeding. On October 13, 2017, the parties filed a Joint Statement, as well as a copy of the Superior Court's tentative ruling. Joint Statement (dkt. 34); Joint Statement Ex. A (Tentative Ruling). The parties have not provided the Court with further updates since filing their Joint Statement.

The Superior Court's tentative ruling only briefly discussed the due process concerns in regards to Rene Medina. See Tentative Ruling at 1. When addressing the due process implications of the 2017 License Conditions, the Superior Court acknowledged that "the language of the Order is somewhat broad in its declaration that 'Rene Medina shall not have any communication directly or indirectly, with any employee or owner of Lucky Chances.'" Id. at 6. However, it also noted that the Commission, in its Opposition to Lucky Chances' petition for writ, said "the license restrictions do not impose restrictions on Rene Medina, instead requiring Petitioners to take steps necessary to exclude Rene Medina from Lucky Chances premises and to control and report communications between Rene Medina and Lucky Chances' shareholders and employees . . ." See id. Acknowledging the Commission's more narrow interpretation of the conditions, the Superior Court did not address the issue further. The Superior Court's tentative ruling

granted Lucky Chances' petition only insofar as the Commission "abused its discretion in imposing a fine in excess of the statutory limit . . . ." Id. at 7.  In the parties' Joint Statement, they informed the Court that, after the Writ Hearing, the only issue remaining was whether the Commission had indeed abused its discretion in imposing excessive monetary penalties.  See Joint Statement at 1.  The Superior Court set a letter briefing schedule for the parties to address the monetary penalties issue and continued the Writ Hearing to December 22, 2017.  Id.

This Court will not abstain on the basis of the ongoing proceeding in Superior Court.  As discussed below, Defendants have not raised adequate grounds for abstention.  Further, the Superior Court's tentative ruling, and the parties' Joint Statement regarding the status of that ruling, indicate that the writ proceeding will not adequately address the constitutional claims Medina makes in this Court.

### b.  **Pullman** Abstention

Defendants argue that abstention is appropriate under R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).  As discussed below, given Medina's First Amendment claims in this federal case, the Pullman abstention criteria are not met.

Pullman abstention allows a federal court to defer hearing a case when "'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"  C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir. 1983) (quoting Cty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959)).  Pullman abstention is appropriate when a lawsuit meets three criteria:

> (1) the complaint must touch a sensitive area of social policy into which the federal courts should not enter unless there is no alternative to adjudication; (2) a definitive ruling on the state issues by a state court could obviate the need for constitutional adjudication by the federal court; and (3) the proper resolution of the potentially determinative state law issue is uncertain.

Kollsman v. City of Los Angeles, 737 F.2d 830, 833 (9th Cir. 1984).

Here, Pullman abstention is not appropriate because the first criterion is not met.  Among his claims for relief, Medina has alleged violations of the First Amendment.  See

Compl. ¶¶ 71–76.  The Ninth Circuit has noted that "Pullman abstention is rarely appropriately invoked in cases implicating the First Amendment."  Courthouse News Service v. Planet, 750 F.3d 776, 783 (9th Cir. 2014).  The Courthouse News Service court discussed the long line of cases in which the Ninth Circuit has rejected Pullman abstention "because the guarantee of free expression is always an area of particular federal concern."  Id. at 784.  The court also noted that the only First Amendment case the Ninth Circuit ever found to have satisfied Pullman was "procedurally aberrational," in that the plaintiffs had a case pending in the California Supreme Court.  Id.  In that case, a stay would not require the plaintiffs to undergo the expense and delay of a full state court litigation.  Id.  Because those exceptional factors were not present in Courthouse News Service, the Ninth Circuit reversed the district court's decision to abstain.  Id. at 784–85.  Those exceptional factors are also not present here, where Lucky Chances' petition for writ is still pending in Superior Court.  Waiting for the Superior Court to reach a final decision, and for any potential appeals to be heard, would needlessly delay Medina's case.  Further, as noted above, the Superior Court proceeding has not, and likely will not, "obviate the need for constitutional adjudication by" this Court.  See Kollsman, 737 F.2d at 833.  Thus, abstention is not warranted.

### c.  Abstention to Prevent Interference with State Government Agencies

Defendants next argue that abstention is further warranted, "[g]iven the important principles of federalism raised."  Defs.' Mot. at 9–10.  Defendants' primary federalism argument is that Medina's "insufficient allegations" and the "high bar for injunctive relief regarding government agencies" justify abstention.  Id.  However, Defendants' arguments discuss only the merits of Medina's claims for relief, rather than a recognized abstention doctrine.  Defendants' only cited authority is Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001), in which the Ninth Circuit did not address abstention, but rather, whether a district court had abused its discretion in granting injunctive relief.  Defs.' Mot. at 10; see Gomez, 255 F.3d at 1128–31.  Because Defendants have not pointed to any recognized abstention

doctrine to support their federalism argument, the Court finds this argument unpersuasive.

Defendants further argue that abstention is appropriate because, while Medina is not a party to the state writ proceeding, he has the opportunity to bring his claim in state court. Defs.' Mot. at 10. Defendants note that the California Gambling Control Act provides Medina with standing to file a petition in state court to challenge the legality of the Commission's Decision and Order, citing Cal. Bus. & Prof. Code § 19932(a) ("Any person aggrieved by a final decision or order of the Commission … may petition … for judicial review …"). Defs.' Mot. at 10–11. However, even Defendants' primary case in support of Pullman abstention notes that "the practical effect of abstention in [civil rights] cases may be to impose an exhaustion requirement not appropriate to 42 U.S.C. § 1983." See Pearl Inv. Co. v. City & Cty. of San Francisco, 774 F.2d 1460, 1463 (9th Cir. 1985). Further, courts generally do not abstain when the federal plaintiff is not a party to the pending state proceeding—even if the plaintiff has an opportunity to intervene. See Gilbertson v. Albright, 381 F.3d 965, 976 (9th Cir. 2004) ("Younger does not apply to nonparties just because they could have intervened."). For the foregoing reasons, the Court finds the Defendants' federalism arguments unpersuasive and DENIES Defendants' request to abstain.

## 2. Judicial Immunity

Defendants also argue that the Defendants who are named members of the Commission—Jim Evans, Lauren Hammond, and Trang To—are entitled to judicial immunity from Medina's injunctive relief claims. Defs.' Mot. at 11. Further, both in his Opposition to Defendants' Motion to Dismiss and at the Motion Hearing, Medina conceded that the Commission members are entitled to judicial immunity, and clarified that his request for injunctive relief is directed only to Defendants Becerra and Quint.[11] See Plaintiff's Opp'n (dkt. 27) at 1, 9. The Court agrees. Because they were initiating

---

[11] Medina does not concede that they are immune from his claims for declaratory relief, see Plaintiff's Opp'n at 8, and Defendants have not asked this Court to grant judicial immunity to any of the named defendants from Medina's claims for declaratory relief, see Defs.' Reply (dkt. 29) at 6.

agency adjudication and performing functions "analogous to judges and prosecutors" when they imposed license conditions on Lucky Chances, the Court GRANTS Defendants Evans, Hammond, and To immunity from Medina's injunctive relief claims. See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999).

### 3. Adequacy of the Pleadings

Defendants also contend that Medina's Complaint fails to plead a valid Section 1983 claim against them. Defs.' Mot. at 2. Specifically, Defendants contend that the Complaint fails to allege facts establishing a "connection or link" between the Defendants and the constitutional deprivations Plaintiff suffered. Id. at 6–7. The Court disagrees.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50. To sufficiently allege liability under Section 1983, a plaintiff must plead an affirmative link between his injury and the defendant's conduct. See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 370–72 (1976). However, the Ninth Circuit has not indicated that this requirement applies to claims for injunctive or declaratory relief. See Padilla v. Nev. Dep't of Corr., 510 F. App'x 629, 630 (9th Cir. 2013) ("We are unaware of any case that requires a prisoner's claim for injunctive relief to allege the personal participation of the defendants or to 'link' each specific defendant with an alleged constitutional violation."). This is likely because claims seeking injunctive or declaratory relief need not show past harm, but rather "a very significant possibility of future harm." Coral Const. Co. v. King Cty., 941 F.2d 910, 929 (9th Cir. 1991).

Throughout the Complaint, Medina alleges that the source of his injuries is the license conditions imposed on February 9, 2017. See, e.g., Compl. ¶¶ 67–70. Defendants argue that "while Plaintiff may have sufficiently pled the required link in regard to the

15

Commission, the Commission is not a named defendant." Defs.' Mot. at 8. Medina has alleged that these conditions were imposed by the Commission and that the Bureau has the authority to enforce them. Id. ¶¶ 4–6. As discussed below, Medina's allegations are sufficient to "connect" or "link" each Defendant to his claims.

### a.    Defendant Quint and Defendant Becerra

Medina alleges that Defendant Becerra "was and is the Attorney General for California," that "the Bureau of Gambling Control is within the Department of Justice," and that "any power or authority of the department . . . may be exercised by the Attorney General or any other person as the Attorney General may delegate." Id. ¶¶ 4, 9. Medina alleges that Defendant Quint, "in his official capacity of Chief of the Bureau of Gambling Control, has the exclusive authority to enforce the February 9, 2017 Decision and Order of the Commission" and that such enforcement "will necessarily and foreseeably result in a significant violation of Mr. Medina's fundamental constitutional rights." Id. ¶ 40.

It is true that Medina does not allege Defendant Quint's or Defendant Becerra's involvement in some of his claims for relief. And many of Medina's claims are based on past actions by the Commission. For example, Medina alleges that the Commission violated his procedural due process rights when it issued its Decision and Order without notice or an opportunity to be heard. Id. ¶¶ 55–58.

However, Medina prays for relief in the form of declaratory and injunctive relief. Compl. at 16–17. Regardless of which actors Medina alleged initially implemented his constitutional deprivations, Defendants Quint and Becerra are those tasked with carrying out such deprivations by enforcing the Commission's conditions. This is sufficient to establish a link between Medina's claims and Defendants Quint and Becerra.

### b.    Defendants Evans, Hammond, and To

Medina alleges that Defendants Evans, Hammond, and To (the "Commission Defendants") were, or are, current members of the Commission, which is the "agency [] tasked with determining, inter alia, whether to grant a gaming license to a particular applicant, and to what extent conditions may be imposed as a condition of being licensed."

Id. ¶ 6.  Further, the Commission's Decision and Order (attached to Medina's Complaint as Exhibit D) is signed by each of Defendants Evans, Hammond, and To.  Id. at 89.

Although the Complaint does not explicitly allege the Commission Defendants' individual involvement in Medina's harm, there are sufficient facts to draw the reasonable inference that they were involved in the execution of the Commission's Decision and Order.  By signing the Decision and Order, the Commission Defendants effectively imposed the license conditions which Medina alleges violate his constitutional rights.  This is sufficient to establish a link between Medina's claims and the named Commission Defendants.

Accordingly, this Court DENIES Defendants' Motion to Dismiss for failure to state a claim against the named Defendants.

## III.  MEDINA'S MOTION FOR PRELIMINARY INJUNCTION

### A.  Legal Standard: Motion for Preliminary Injunction

Federal Rule of Civil Procedure 65(a) governs the issuance of preliminary injunctions.  To obtain a preliminary injunction pursuant to Rule 65(a), a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary remedy never awarded as of right.  In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'  'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'"  Id. at 24 (internal citations omitted).  The Ninth Circuit has adopted a sliding scale approach to preliminary injunctions in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

## B.      Discussion: Motion for Preliminary Injunction

Medina makes several claims for injunctive relief and asks that the Court enjoin Defendants Becerra and Quint from enforcing the new conditions added to Lucky Chances' gambling licenses in 2017.  Plaintiff's Mot. (dkt. 10) at 24.  Medina does not object to the 2017 License Conditions insofar as they are consistent with the 2009 License Conditions.  See id.  Thus, Medina objects to License Condition One and License Condition Five of the 2017 License Conditions, and to the other license conditions to the extent that they require adherence to License Conditions One and Five.  License Condition One provides that "Rene Medina shall be prohibited from entering, being present in, or in any way patronizing any areas on Lucky Chances' property."  Decision and Order at 31.  License Condition Five provides that "Rene Medina shall not have any communication, directly or indirectly, with any employee or owner of Lucky Chances, except that Rene Medina may communicate with his immediate family members provided the communication does not relate to any part of [Lucky Chances'] business."  Id. at 32.

Medina's claim that License Condition One violates his constitutional rights is not yet ripe.  However, Medina's claim that License Condition Five constitutes an impermissible prior restraint in violation of the First Amendment justifies a preliminary injunction.

### 1.      License Condition One

Medina's request that this Court enjoin Defendants from enforcing License Condition One appears to be unripe.  In fact, Defendants have consistently recognized that Condition One does not restrict Medina from entering Café Colma.  Rather, Defendants have contended that Condition One is merely directed at Lucky Chances, providing penalties for Lucky Chances should it not fulfill its obligations under the license conditions.[12]  The Defendants adopted this position in their Motion to Dismiss, see Defs.'

---

[12] Medina did not argue in his Motion that he will suffer any injury as a result of penalties imposed on Lucky Chances.  However, at the Motion Hearing, Medina's counsel raised, for the first time, Medina's apparent financial interest in the ongoing licensure of the Casino.  See Motion Hearing Transcript (dkt. 37) at 16.  As Medina's Motion is denied without prejudice, he may make

Mot. at 5 ("The Conditions were not imposed on Plaintiff."), and in the Commission's filings in Superior Court, see Tentative Ruling at 6 ("Respondent responds that the license conditions do not impose restrictions on Rene Medina . . . ").  In their Opposition to Lucky Chances' petition, the Commission argued that the Order "obviously cannot, and does not, impose any restrictions upon Rene Medina, who is neither a licensee nor a party herein. Rather, it requires [Lucky Chances] to take whatever steps are necessary to exclude Rene Medina from the Lucky Chances premises."  Respondent's Opp'n to Petition (Superior Court dkt. 29) at 23.  Because this Court reads License Condition One as not restricting Medina from entering Café Colma, and Defendants affirm this reading, Medina's request to enjoin Defendants from enforcing License Condition One against him personally is not yet ripe.

However, if Lucky Chances or any third party excludes Medina from Café Colma, at the direction of Defendants, his claim will become ripe.  See Peterson v. City of Greenville, 373 U.S. 244, 248 (1963) (finding state action against individuals when the "[s]tate has commanded a particular result" by compelling private actors to violate those individuals' constitutional rights).  Thus, this Court DENIES Medina's Motion for Preliminary Injunction as to License Condition One without prejudice.

### 2. License Condition Five

Unlike License Condition One, License Condition Five constitutes a direct restriction on Rene Medina.  Further, as to License Condition Five, Medina has established (1) likelihood of success on the merits, (2) irreparable injury, (3) a balance of equities in his favor, and (4) that a preliminary injunction is in the public interest.  See Winter, 555 U.S. at 20.

#### a. Likelihood of Success on the Merits

Medina has established a likelihood of success on the merits for his First Amendment Claim.

---

alternative arguments based on this potential property interest in the future, if he wishes to do so.

In his First Amendment claim, Medina contends that the 2017 License Conditions "constitute a prior restraint of protected expression." Plaintiff's Mot. at 21. In support of his claim, Medina points to License Condition Five of the 2017 License Conditions, which prohibits him from speaking with all employees of Lucky Chances regarding any subject matter. Id. at 21–22. He asserts that this would include topics such as "sports, current events, politics, religion, family or matters of public concern." Id. The plain language of License Condition Five does not contradict Medina's assertions. See Decision and Order at 31–32.

A prior restraint on speech exists when the exercise of protected expression is contingent upon the approval of government officials. See Near v. Minnesota, 283 U.S. 697, 711–13 (1931). The term prior restraint describes "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4–14 (1984)). There is a "heavy presumption" against the validity of a prior restraint on speech. Forsyth Cty., Ga. v. Nationalist Movement, 505 U.S. 123, 130 (1992); Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 558 (1976). "'Unlike an adverse action taken in response to actual speech,' a prospective restriction 'chills potential speech before it happens.' The government therefore must shoulder a heavier burden when it seeks to justify an ex ante speech restriction . . ." Moonin v. Tice, 868 F.3d 853, 861 (9th Cir. 2017) (citing United States v. Nat'l Treasury Emps. Union, 513 U.S. 454, 468 (1995)).

Here, because License Condition Five prohibits Medina from communicating with all Lucky Chances employees, regardless of subject matter, it constitutes a prior restraint on speech. License Condition Five is an order imposed directly on Medina which forbids his communications before those communications occur. See Alexander, 509 U.S. at 550.

Defendants have not met the heavy burden of justifying this prospective restriction on Medina's speech. Defendants argue that while the Casino was subject to the 2009 License Conditions, Medina acted in a way that "established material involvement with a

20

gambling operation." Defs.' Opp'n at 4. Defendants stress the "longstanding public policy regarding, and public interest in, gambling regulation." Id. at 5–7. However, Defendants provide no justification for License Condition Five specifically. See Defs.' Opp'n at 11. They do not articulate how prohibiting Medina from communicating with Lucky Chances employees on all topics, even those unrelated to the gambling operation, will further their interest in regulating gambling. At the Motion Hearing, Defendants' counsel was unable to provide any precedential authority to support the constitutionality of License Condition Five and conceded that "there probably should be some narrowing of that particular provision." Motion Hearing Transcript at 7. Defendants have not met their heavy burden of justifying the prior restraint. See Moonin, 868 F.3d at 861.

Accordingly, Medina is likely to succeed in showing that License Condition Five violates the First Amendment. As Medina has shown a likelihood of success on the merits for his First Amendment claim, this Court need not address Medina's other claims for relief.

### b.     Irreparable Harm

Medina alleges his injury in the form of interference with his constitutional rights. Plaintiff's Mot. at 22–23. Specifically, Medina asserts that his harm is significant because "he is being deprived of a basic liberty interest by the Commission," including "the right to speak with employees of Lucky Chances Casino." Plaintiff's Mot. at 23.[13] Medina's asserted harm derives from the unconstitutional prior restraint on his speech.

The Supreme Court has held that a loss of First Amendment freedom of speech "for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v.

---

[13] In his Motion, Medina primarily contends that he suffers harm because he has been deprived of a basic liberty interest, granted by California's Unruh Civil Rights Act, without due process of law. Id. at 13–14; see also Motion Hearing Transcript at 14–15. At the Motion Hearing, this Court indicated that any interest provided by Unruh would require an individual to assert membership in a protected class. Motion Hearing Transcript at 15; see Gayer v. Polk Gulch, Inc., 231 Cal. App. 3d 515, 521 (Ct. App. 1991). In his Motion, Medina did not assert any other interest entitled to due process, though he did, for the first time at the Motion Hearing, raise his financial interest in Lucky Chances. Motion Hearing Transcript at 15–16. Nevertheless, as Medina's asserted harm also derives from his valid First Amendment claim, the Court need not decide this issue at this time.

Burns, 427 U.S. 347, 373 (1976). In order to a establish a likelihood of irreparable harm, Medina must do more than assert a First Amendment violation; he must show purposeful unconstitutional suppression of speech. See Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 472 (9th Cir. 1984).

Here, Medina has established a valid First Amendment claim that is likely to succeed on the merits. Without the benefit of a preliminary injunction, Medina suffers prior restraint on his speech. Given Medina's declaration that the Commission has "prohibited [him] from talking to any employees of Lucky Chances Casino, including topics unrelated to gambling activities," Medina has demonstrated purposeful, unconstitutional suppression of speech. Medina Decl. ¶¶ 43, 45. Thus, Medina has established a likelihood of irreparable harm.

### c.    Balance of Equities and Public Interest

The final two elements of the preliminary injunction test—that the balance of equities tips in his favor, and that an injunction is in the public interest—weigh in favor of granting Medina's Motion for Preliminary Injunction. In a motion for preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. (internal citations omitted).

Here, Defendants argue that California has strong interests in regulating gambling, ensuring public trust, and keeping criminal and corruptive elements and disqualified persons from associating with gambling establishments. Defs.' Opp'n at 13. They argue that an injunction would frustrate those interests by allowing a convicted felon to "return to circumstances which previously led to GCA violations." Id. As discussed above, the Defendants have not explained why enforcement of the broadened 2017 restrictions on Medina's speech will better prevent actions in violation of the GCA. And, even assuming that those conditions do further the public interest in regulating gambling, that interest is

outweighed by Medina's First Amendment interest in communicating with Lucky Chances employees regarding non-gambling related topics.

If Defendants Becerra and Quint enforce License Condition Five against Medina, he is likely to suffer irreparable injuries with respect to his constitutional right to free speech, which cannot be adequately remedied through damages.  See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th Cir. 2009).

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Medina's Motion for Preliminary Injunction and ENJOINS Defendants Quint and Becerra from enforcing License Condition Five.

**IT IS SO ORDERED.**

Dated: November 16, 2017

CHARLES R. BREYER
United States District Judge