IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE MEDINA,<br><br>    Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as ATTORNEY GENERAL of the STATE of CALIFORNIA, et al.<br><br>    Defendants. | Case No. 3:17-cv-03293 CRB<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCION** |

This case arises from the conditions that the California Gambling Commission has imposed on the gambling license of the Lucky Chances Casino, and the impact of those conditions on its founder, Plaintiff Rene Medina. Plaintiff has already won from this Court an injunction barring the defendants from enforcing a particularly egregious licensing condition, which prevented him from speaking with all employees of Lucky Chances regarding any subject matter. See Order Granting Motion for Preliminary Injunction (dkt. 31); Order Denying Defs. Motion to Dismiss and Granting Pls. Motion for Preliminary Injunction (dkt. 38). Medina now seeks a second preliminary injunction, pertaining to a different licensing condition. See MPI (dkt. 58). As explained below, the Court concludes that Medina is unlikely to prevail on the merits of his constitutional claims.

## I. BACKGROUND

### A. History of the Case[1]

In 1998, Medina founded Lucky Chances Casino. FAC (dkt. 56) ¶ 15. Medina

---

[1] Much of this section is duplicative of the Court's Background section in its November 16, 2017 Order Denying Defs. Motion to Dismiss and Granting Pls. Motion for Preliminary Injunction.

owned and operated Lucky Chances Casino until 2007, when he sold the Casino to his two sons, subject to a promissory note. Id. ¶ 18. In 2008, Medina was convicted of felony tax evasion in violation of 26 U.S.C. § 7201. Id. ¶ 19. Because of his felony conviction, Medina is "disqualified" under the California Gambling Control Act and may not hold an ownership interest in any gambling facility, including Lucky Chances. Id. ¶ 20; see Cal. Bus. & Prof. Code § 19859(c). As a result, Medina transferred the promissory note in the Casino to a blind trust agreement. Id. ¶ 21.

### 1. October 8, 2009 Renewal of Lucky Chances Casino's State Gambling License

On October 8, 2009, the Commission renewed the gambling licenses for Lucky Chances Casino and its owners, subject to numerous conditions ("2009 licensing conditions"),[2] including:

1. <u>Rene Medina shall be prohibited from entering, being present in, or in any way patronizing (a) the areas within Lucky Chances Casino in which controlled gambling is conducted and (b) any other areas related to the gambling operation, such as count and surveillance rooms, including all of the 2nd floor.</u>

. . .

5. Any communication between Rene Medina and any shareholder or employee of Lucky Chances concerning the operation of the Lucky Chances cardroom business shall be disclosed to the Executive Director and to the Bureau Chief within one business day of the communication. This disclosure requirement applies to both oral and written communications. This disclosure must be made in writing. The General Manager shall maintain records documenting each disclosure for four years following the disclosure.

Id. ¶ 27. These conditions have remained in place continuously since October 8, 2009. Id. ¶ 28.

---

[2] The Commission has the power to, <u>inter alia</u>, "[t]ake actions deemed to be reasonable to ensure that no ineligible, unqualified, disqualified, or unsuitable persons are associated with controlled gambling activities" and "that gambling activities take place only in suitable locations." Cal. Bus. & Prof. Code § 19824.

### 2. October 21, 2014 Investigation of Lucky Chances Casino by the Bureau of Gambling Control

On October 21, 2014, Special Agents from the California Department of Justice, Bureau of Gambling Control (the "Bureau") conducted an unannounced compliance inspection of Lucky Chances Casino. Id. ¶ 30; see FAC Ex. (dkt. 57) B (Investigation Report). Based on the information obtained during the inspection, Bureau Chief Wayne Quint, Jr. brought an Accusation before the Commission against Lucky Chances Casino and its owners on August 12, 2015. FAC ¶ 32; FAC Ex. C (Accusation) ¶¶ 1–2. The Accusation consisted of two causes of action for violations of Lucky Chances Casino's Licensing Conditions.

The first cause of action alleged a violation of License Condition Five, which required disclosure of "any communication between Medina and any shareholder or employee of Lucky Chances concerning the operation of Lucky Chances cardroom business." Accusation ¶ 3. The Accusation alleged that "[o]n multiple occasions in 2013 and 2014, Lucky Chances provided construction, landscaping, housekeeping, and other valuable services incident to the construction of Medina and his wife's home . . . The wages, salaries, and other costs incurred by Lucky Chances in connection with this work were paid from the operating funds of Lucky Chances, Inc., which, in turn, derived from the proceeds of controlled gambling activities." Id. The Accusation further alleged that, in coordinating these services, "Medina communicated on numerous occasions with the employees and/or their supervisors." Id.

The second cause of action alleged a violation of License Condition Three, which required Medina's sons to ensure that Lucky Chances comply with all licensing conditions. Id. ¶ 4. The Accusation alleged that "[n]either of Medina's sons took any actions to ensure compliance with condition five of the Lucky Chances license." Id.

The Accusation requested the revocation of Lucky Chances Casino's licenses and denial of Medina's sons' applications to renew their Owner Gambling Licenses. Id. ¶ 14.

### 3. The Administrative Law Judge's September 16, 2016 Proposed Decision and Order

On September 16, 2016, following an evidentiary hearing, ALJ Miller issued his findings in a Proposed Decision and Order. FAC ¶ 36; FAC Ex. D (Proposed Decision and Order). ALJ Miller recommended dismissal of the Accusation against Lucky Chances Casino and its owners. Id. at 17. ALJ Miller concluded that "the evidence did not establish any material involvement by a disqualified person in Lucky Chances' gaming operations"; that "[n]either of Medina's sons had prior knowledge that Lucky Chances had incurred expenses or provided services on Plaintiff's behalf"; that "[t]he expenses incurred and services provided had nothing to do with the 'operation of the card room business'"; and that the contacts with Medina were not material to the card room business. Id. at 10–12. ALJ Miller concluded that "no disclosure to the Bureau or the Commission was required." Id. at 12.

### 4. The Commission's February 9, 2017 Decision and Order

After receiving written arguments from both sides, the Commission rejected ALJ Miller's Proposed Decision and Order, and issued its February 9, 2017 Decision and Order. FAC ¶ 37; see FAC Ex. E (Decision and Order). The Commission held that there was material involvement by a disqualified person with a licensed gambling operation, and the ownership or management thereof, in violation of Business & Professions Code § 19823(a)(2). Decision and Order Legal Conclusions ¶ 21. The Commission suspended Medina's sons' state gambling licenses for fourteen days and imposed new conditions ("2017 licensing conditions") on their renewal thereafter, including:

1. <u>Rene Medina shall be prohibited from entering, being present in, or in any way patronizing any areas on Lucky Chances' property.</u>

. . .

5. Rene Medina shall not have any communication, directly or indirectly, with any employee or owner of Lucky Chances, except that Rene Medina may communicate with his immediate family members provided the communication does not relate to any part of [Lucky Chances'] business.

4

FAC ¶ 38; Decision and Order ¶ 3 (emphasis added). The new conditions were never formally requested by the Bureau, do not appear in the Accusation, and were not requested at the hearing before the ALJ. Id. ¶ 41. The Commission appears to have added these conditions sua sponte. Id. On March 28, 2017, the Commission clarified that the licensees are required to exclude Medina "from the entire property, including the non-gaming areas . . . the gift shop, restaurant, and common areas." FAC ¶ 47; FAC Ex. F (Letter).

On June 7, 2017, Medina filed a Complaint in this Court seeking declaratory relief, and a preliminary and permanent injunction, against Defendants Xavier Becerra, in his official capacity as Attorney General of the State of California; Wayne Quint, Jr., in his official capacity as the Chief of the California Department of Justice, Bureau of Gambling Control; Jim Evans, Lauren Hammond, and Trang To, in their official capacities as members of the California Gambling Control Commission; and Does One through Fifty, inclusive. Compl. (dkt. 1) at 1. Medina's Complaint alleged the following seven Claims for Relief, all under 42 U.S.C. § 1983: (1) Violation of Procedural Due Process; (2) Violation of Substantive Due Process: (3) Violation of Equal Protection – Class of One; (4) Violation of Equal Protection – Selective Enforcement Based on Race and National Origin; (5) Violation of Equal Protection – Selective Restriction on Expressive Conduct; (6) Violation of First Amendment – Impermissible Regulation on Modes of Expression and Association; and (7) Violation of First Amendment – Prior Restraint of Protected Expression. Id.

On October 6, 2017, the Court deferred ruling on Defendants' motion to dismiss this case, and granted Medina's motion for preliminary injunction, holding that License Condition Five was an invalid prior restraint on Medina's freedom of speech. See Motion Hearing (dkt. 32); Order on Motion for Preliminary Injunction (dkt. 31). The Court explained the ruling in a longer order a month later. See Order Denying Defs. Motion to Dismiss and Granting Pls. Motion for Preliminary Injunction. As to Condition One, the Court held:

United States District Court
Northern District of California

> Medina's request that this Court enjoin Defendants from enforcing License Condition One appears to be unripe. In fact, Defendants have consistently recognized that Condition One does not restrict Medina from entering Café Colma. Rather, Defendants have contended that Condition One is merely directed at Lucky Chances, providing penalties for Lucky Chances should it not fulfill its obligations under the license conditions.[3]
>
> FN3 Medina did not argue in his Motion that he will suffer any injury as a result of penalties imposed on Lucky Chances. However, at the Motion Hearing, Medina's counsel raised, for the first time, Medina's apparent financial interest in the ongoing licensure of the Casino. See Motion Hearing Transcript (dkt. 37) at 16. As Medina's Motion is denied without prejudice, he may make alternative arguments based on this potential property interest in the future, if he wishes to do so.
>
> The Defendants adopted this position in their Motion to Dismiss, see Defs.' Mot. at 5 ("The Conditions were not imposed on Plaintiff."), and in the Commission's filings in Superior Court, see Tentative Ruling at 6 ("Respondent responds that the license conditions do not impose restrictions on Rene Medina . . ."). In their Opposition to Lucky Chances' petition, the Commission argued that the Order "obviously cannot, and does not, impose any restrictions upon Rene Medina, who is neither a licensee nor a party herein. Rather, it requires [Lucky Chances] to take whatever steps are necessary to exclude Rene Medina from the Lucky Chances premises." Respondent's Opp'n to Petition (Superior Court dkt. 29) at 23. Because this Court reads License Condition One as not restricting Medina from entering Café Colma, and Defendants affirm this reading, Medina's request to enjoin Defendants from enforcing License Condition One against him personally is not yet ripe.
>
> However, <u>if Lucky Chances or any third party excludes Medina from Café Colma, at the direction of Defendants, his claim will become ripe</u>. See Peterson v. City of Greenville, 373 U.S. 244, 248 (1963) (finding state action against individuals when the "[s]tate has commanded a particular result" by compelling private actors to violate those individuals' constitutional rights).

Id. at 18–19 (emphasis added).

**B.     Factual Developments Since the Last Preliminary Injunction**

Medina filed an amended complaint in June of this year, alleging among other things that he has missed numerous cultural and political events at Café Colma "[d]ue to the threat to the gambling licenses of Lucky Chances Casino." FAC ¶¶ 51–52. In April of

6

2018, a memorial service was held at "one of the restaurants at Lucky Chances Casino" for a long-term Lucky Chances Casino employee. Id. ¶ 63. Medina went to the Lucky Chances parking lot, where the General Manager of the Casino stopped him and "explained that even though the restaurants are separate from the gaming floor at Lucky Chances Casino, the condition on the license prohibits Mr. Medina from being present anywhere on the property of Lucky Chances Casino." Id. Medina left. Id.

In July of 2018, Medina filed a second motion for preliminary injunction, this time taking aim at License Condition One. See MPI. Medina argues that his claim "now is ripe." Id. at 4. He moves for a preliminary injunction returning to the set of conditions in place between October 8, 2009 and February 9, 2017. Id.

In opposing the motion, Defendants asserted some facts that were not before the Court on the last motion. They asserted, by reference to a number of hearsay documents, that Medina has been improperly involved in the management of Fortune Players Group, Inc., which is Lucky Chances' third-party provider of proposition player services. Opp'n (dkt. 66) at 6. A third-party provider is a business that provides players who participate in card games with a rotating player-dealer position. Id. at 6 n.4. Third party providers are required to be licensed. Id. at 6. Defendants asserted in their brief that "Much of [Medina's involvement in Fortune Players] occurred from the restaurant" in Lucky Chances. Id. at 9 n.8; see also id. at 12 ("Plaintiff previously exercised managerial involvement in the third-party provider while at Café Colma.").

The Court held an evidentiary hearing on October 12, 2018, to learn more about the Café's "layout, access points, physical distance from the casino, ownership, and whether or not it is a gambling establishment as defined by California Business & Professions Code § 19805(o)." See Order Vacating Motion Hearing and Setting Evidentiary Hearing (dkt. 72); Evidentiary Hearing (dkt. 75). At the evidentiary hearing, Defendants' counsel conceded that in fact he did not have any evidence of Medina engaging in Fortune Players Group business from inside the Café, although two former Casino employees testified that Medina did so from nearby a fish tank and a booth in the public lobby between the Café

7

1 and the card room.

Having heard the parties' evidence and arguments at the evidentiary hearing, and having carefully reviewed their legal briefs, the Court now turns to the pending Motion for Preliminary Injunction.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs the issuance of preliminary injunctions. To obtain a preliminary injunction pursuant to Rule 65(a), a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" Id. at 24 (internal citations omitted). The Ninth Circuit has adopted a sliding scale approach to preliminary injunctions in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

## III. DISCUSSION

"The first factor under Winter is the most important—likely success on the merits." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015). The problem for Medina is that, although his challenge to License Condition One is now indisputably ripe, he has not successfully fashioned it into a cognizable claim under (A) the Due Process Clause, (B) the Equal Protection Clause, or (C) the First Amendment.

### A. Due Process

#### 1. Procedural Due Process

Medina alleges that the defendants violated his right to procedural due process.

United States District Court
Northern District of California

FAC ¶ 67. A procedural due process claim requires: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." See Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). Although the First Amended Complaint is a little vague in alleging what interest the defendants deprived him of, see FAC ¶¶ 64–67, Medina's briefing leaves no room for doubt. Medina argues that "state statutes or regulations [can create] liberty interests protected by the Fourteenth Amendment,"[3] then asserts that "the applicable California statute is the Unruh Civil Rights Act." MPI at 13.

The plain language of the Unruh Civil Right Act suggests that Medina might be on to something: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." See Cal. Civ. Code Sec. 51(b). But, notwithstanding the Act's "all persons" language, courts have determined that "membership in a protected class is a requirement for protection under the Act." See Gayer v. Polk Gulch, Inc., 231 Cal. App. 3d 515, 521 (1991); see also Jensen v. Sweet Home One Care Facility, No. C 00-3261 VRW, 2005 WL 873310, at *8 (N.D. Cal. Jan. 31, 2005) ("a business entity is not liable for discriminating against a plaintiff, who happens to be a member of a suspect class, so long as such discrimination is based upon the plaintiff's inappropriate conduct . . . and not based on his class membership."). The California Court of Appeal explained that its precedent had never been "that a person who is not a member of any class protected under the Act[] is nonetheless protected as an individual." Gayer, 231 Cal. App. 3d at 521.

Because Medina's claim is based on his asserted right, as an individual, "to patronize the restaurant Café Colma adjacent to the Lucky Chances Casino, see MPI at 13–

---

[3] This is certainly true. See Marsh v. City of San Diego, 680 F.3d 1148, 1155 (9th Cir. 2012) ("liberty interests can be defined by state law.").

9

1   14, he is not protected under the Unruh Act. The Court has already expressed this

2   position. See Order Denying Defs. Motion to Dismiss and Granting Pls. Motion for

3   Preliminary Injunction at 21 n.13 ("At the Motion Hearing, the Court indicated that any

4   interest provided by Unruh would require an individual to assert membership in a

5   protected class [citing hearing transcript and Gayer]."). Moreover, Medina's pending

6   motion concedes that he "is not aware of any Federal or California decision that has

7   addressed the issue of whether the Unruh Civil Rights Act creates a liberty interest

8   protected by the Fourteenth Amendment." MPI at 14 n.2. Nonetheless, Medina rests his

9   entire procedural due process claim on the Unruh Act. See id. at 13.

Medina did not argue that California Business and Professions Code section 19844 ("Exclusion or ejection of individuals from gaming establishments") itself establishes a liberty interest in not being excluded from a gambling establishment without a particular process. Even if he had, this section does not actually say that individuals in his position are entitled to a certain process before being barred from gambling establishments. It states that "The commission shall, by regulation, provide for the formulation of a list of persons who are to be excluded or ejected from any gambling establishment," lists a number of considerations the Commission "may consider," such as prior felony convictions, and states that "[t]he commission shall adopt regulations establishing procedures for hearing of petitions by persons who are ejected or excluded from licensed premises pursuant to this section." Id. The regulations that accompany the section, which are entitled "Statewide Involuntary Exclusion List," state that "a licensee may remove a person from the gambling establishment," 4 CCR § 12362(a), or that "A licensee or government official . . . may submit . . . a request to exclude an individual from all California gambling establishments based upon the reasons listed in Business and Professions Code section 19844 or 19845. . . ," id. § 12362(b) (emphasis added). When moving for statewide exclusion, "[i]f there appears to be a good cause to place an individual on the statewide involuntary exclusion list, the Executive Director shall cause a notice of exclusion to issue to the individual." Id. § 12362(d). The individual can then

10

contest the exclusion by requesting a hearing. Id. § 12362(e). The regulations do not appear to envision a government official excluding an individual from a single gambling establishment, or guarantee a process in that instance.[4]

Medina has also not claimed a property interest that could anchor his procedural due process claim. The Court mentioned in its order on the last motion for preliminary injunction that "[i]n his Motion, Medina did not assert any other interest entitled to due process, though he did, for the first time at the Motion Hearing, raise his financial interest in Lucky Chances. [citing hearing transcript]." See Order Denying Defs. Motion to Dismiss and Granting Pls. Motion for Preliminary Injunction at 21 n.13. The FAC alleges that Medina sold the casino to his sons for $48,000,000, subject to a promissory note, and that he subsequently transferred interest in the promissory note to a blind trust, into which his sons pay $600,000 per quarter. See FAC ¶¶ 18–22. But Medina has not argued that the challenged license condition somehow deprives him, without adequate process, of his financial interest in the Casino via the blind trust. And there is no basis for the Court to assume that Medina's sons would fail to continue making their quarterly payments to the blind trust if the Casino lost its license.[5]

Because Medina has failed to identify a constitutionally protected liberty or property interest, see Brewster, 149 F.3d at 982, he is unlikely to prevail on his procedural due process claim.

### 2. Substantive Due Process

Medina's substantive due process claim suffers from the same flaw. Medina alleges in his FAC that his prohibition from the non-gambling areas of the Casino "deprived [him] of a liberty interest without due process" and that "[t]his constitutes an outrageous abuse of power committed as a deliberate flouting of the law." FAC ¶ 68.

The Due Process Clause "forbids the government from depriving a person of life,

---

[4] To be clear, Medina has not been banned from all casinos statewide. See SAC ¶ 64 (on one exceptionally productive day, Medina gambled at three different casinos).
[5] Indeed, at the motion hearing, Medina's son testified about the family's expansive business holdings.

11

liberty, or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Nunez v. City of Los Angeles, 147 F. 3d 867, 871 (9th Cir. 1998) (internal quotation marks omitted). Substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Medina cites to a couple of cases where arbitrary government action met the "shocks the conscience" test. See MPI at 14–15. However, those cases involved the infringement of an established liberty or property interest. See e.g., Galland v. City of Clovis, 24 Cal. 4th 1003 (2001) (where the California Supreme Court discussed whether the government's conduct was "conscious shocking" when it deprived plaintiffs of a property interest); Shaw v. Winters, 796 F.2d 1124 (9th Cir. 1986) (where the Ninth Circuit applied the "outrageous conduct" test while addressing a prisoner's petition for habeas corpus). Medina has not demonstrated that the Commission infringed on any liberty interest, fundamental or otherwise.

Nor does the Commission's action here actually shock the conscience. The evidentiary hearing did not include any evidence that Medina was conducting Fortune Players business from the Café. However, it did demonstrate that the Café, where no gambling activity takes place, and which Defendants' counsel conceded is not itself "a gambling establishment" pursuant to Business and Professions Code § 19805(o), is nonetheless in close proximity to the Casino's card room. They share a parking lot, entrance, and roof. No door walls off the card room from the public lobby the two establishments share. Indeed, the Café supplies food to the card room. While the Court might question the necessity of barring Medina from the Café, it does not seem an outrageous abuse of power for the Commission, in fashioning licensing conditions for Lucky Chances, to have done so.

The Commission has jurisdiction over the operation of gambling establishments and "all persons and things having do with" their operations. See Cal. Bus. & Prof. Code §

12

19811(b). Whatever else can be said of the conditions imposed, it is beyond question that the Commission had jurisdiction to impose licensing conditions on Lucky Chances. Moreover, as a "person aggrieved by a final decision or order of the commission," Medina could have petitioned—and perhaps still could petition— for a judicial review of the licensing condition. See Cal. Bus. & Prof. Code § 19932(s). While this Court is not saying that Medina failed to exhaust his state court remedies, see Order Denying Defs. Motion to Dismiss and Granting Pls. Motion for Preliminary Injunction at 14 (inappropriate to impose exhaustion requirement in section 1983 cases), the process available to Medina lessens the Court's concerns about abuse of power.

The Commission's October 8, 2009 conditions, which allowed Medina into the non-gambling areas of the Casino, were arguably ineffective. See Decision and Order Legal Conclusions ¶ 21 (concluding that there was material involvement by a disqualified person with a licensed gambling operation). The State has an interest in protecting the public trust and confidence through comprehensive regulation of gambling. See Cal. Bus. & Prof. Code § 19801(h). Its amended licensing conditions arguably served that interest. Cf. Marshall v. Sawyer, 365 F.2d 105, 110 (9th Cir. 1966) (holding where individual was excluded from fifteen or twenty Nevada gambling establishments pursuant to black book regulation, that unchallenged regulation was a "valid restriction on the use of gaming facilities by certain classes of individuals.").

Accordingly, Medina has failed to establish a likelihood of success on the merits for his substantive due process claim.

### B. Equal Protection

Medina's equal protection claims are multifaceted, alleging that the defendants violated his rights by treating him differently than others similarly situated either (1) because he is a "class of one," or (2) because of his race and national origin, or (3) because of his expressive conduct at the Café. See FAC ¶¶ 70–83.

#### 1. Class of One

As to his class of one claim, the Equal Protection Clause commands that no State

13

shall "'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). To establish a "class of one" equal protection claim, Medina must establish that the defendants "intentionally, and without rational basis, treated [him] differently from others similarly situated." See id.

Here, Medina claims that "in the past four years several licensees have had their licenses revoked or not renewed" and that the Decision and Order is (a) "the only time that the Commission has imposed new conditions on a gambling license that restricted the rights of a non-licensee individual sua sponte and without notice to the non-licensee individual"; (b) "the only time that the Commission has restricted a non-licensee individual from patronizing 'the entire property . . .'"; (c) "the only time that the Commission has prevented a non-licensee individual from having 'any communication . . . with any employee"—although this condition is no longer part of Medina's case; (d) "the only time that the Commission has permitted the non-licensee individual to gamble at any other licensed casino, but not patronize the non-gambling areas of the casino at which he formerly was a license holder"; and (e) "the only time that the Commission has punished a non-licensee individual for non-gambling activities including using 'employees of Lucky Chances' maintenance department [to] perform[] services during their regular work hours . . . at [the] home.'" FAC ¶¶ 74–75.

As an initial matter, the Court is not persuaded that the three other license holders Medina compares himself to are truly similarly situated. Compare MPI at 16 ("The above three licensees engaged in criminal or prohibited financial activities regarding their casino operations, yet the Commission continues to permit them to enjoy unfettered access to their former casinos."); with Opp'n at 18 ("significant differences exist between Plaintiff

14

and these other former licensees. . . . Importantly, unlike these other persons, only Plaintiff was materially involved in the operation, management, or ownership of the card room and its third-party provider after he no longer held any license. [Torngren Decl. at 3 ¶ 8]."). It was the Commission's conclusion on February 9, 2017 that "there was material involvement by a disqualified person with a licensed gambling operation, and the ownership or management thereof" that prompted the change to License Condition One. See Decision and Order Legal Conclusions ¶ 21.

Even if Medina could establish that the Commission treated others similarly situated differently, the Commission's actions in imposing the 2017 licensing conditions would survive rational basis review. Government action runs afoul of the Equal Protection Clause if there is no "rational relationship between disparity of treatment and some legitimate governmental purpose." Cent. State Univ. v. Am. Ass'n of Univ. Professors, 526 U.S. 124, 127–28 (1999). California has an interest in regulating gambling. See Cal. Bus. & Prof. Code § 19801(h). License Condition One is logically related to the Commission's purpose. Prohibiting Medina from entering Café Colma further distances Medina from the gambling operation. Since the bar to establishing a rational basis is a low one, these inferences are sufficient to establish a link between the government's legitimate interest and Medina's disparity in treatment. See Ry. Express Agency v. New York, 336 U.S. 106 (1949).

Medina has therefore failed to establish a likelihood of success on the merits for his Equal Protection class of one claim.

### 2. Race and National Origin

As to his selective enforcement based on race and national origin claim, Medina claims that he and his sons "were singled out for unprecedented selective law enforcement based, in part, on his Filipino and/or Asian ancestry." FAC ¶ 78. Medina alleges that Lucky Chances Casino is owned and operated by his sons, who are of Filipino descent, and that approximately half of its employees and customers are of Asian descent. Id. ¶ 77. Section 1983 selective enforcement claims are evaluated under "ordinary equal protection

15

standards." Wayte v. United States, 470 U.S. 598, 608 (1985). To prevail on an equal protection selective enforcement claim, Medina must show that the Defendants' conduct had (1) a discriminatory effect and (2) a discriminatory motivation. See id. at 608.

Medina has not adequately alleged that the 2017 licensing conditions produced a discriminatory effect or that Defendants acted with a discriminatory motivation. That Lucky Chances, its staff, and its customers are predominately of the same race or national origin provides no support for the contention that Lucky Chances was targeted based on that race or national origin. One Assemblymember's July 2018 statement that "licensees with an Asian Pacific Islander background seem to be the focus of . . . disparate treatment," see Reply (dkt. 70); RJN Ex. K, is inadequate support for his allegations.

Medina has therefore failed to establish a likelihood of success on the merits for his Selective Enforcement based on race and national origin claim.

### 3. Expressive Conduct

As to Medina's selective enforcement based on expressive conduct claim, Medina alleges that License Condition One prevents him from visiting Café Colma, where he meets with politicians, religious leaders, and community organizations, that it is not tailored to a substantial government interest, and that it discriminates among licensees and third parties associated with licensees. FAC ¶¶ 80–82. Medina relies on Police Dep't of City of Chicago v. Mosley, 408 U.S. 92 (1972). See MPI at 18.

The First Amendment provides "that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Mosley, 408 U.S. at 95. "Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." Id. at 96. Accordingly, Mosley stands for the proposition that "exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." Id.

But Medina has not established that the licensing conditions are content based

16

restrictions on his speech. To the contrary, the core of Medina's complaint is that the 2017 licensing conditions are overly broad; they do not distinguish between gambling and non-gambling interactions and communications. The 2017 licensing conditions prohibit Medina's presence on all areas of Lucky Chances property (and they previously barred "any communication" with Lucky Chances employees). As Medina has not established that the 2017 licensing conditions are content based restrictions on speech, Mosley does not apply.

Medina has failed to establish a likelihood of success on the merits for his Selective Restriction on Expressive Conduct claim.

### C. First Amendment

Finally, Medina claims that License Condition One "is not intended to regulate gambling activities" at the Casino, but instead "attempts to regulate modes of expression and association unrelated to gambling activities." FAC ¶¶ 84–85.[6] Medina's claim relies on NAACP v. Button, 371 U.S. 415 (1963). See MPI at 19–20. In Button, the NAACP contested a Virginia statute which banned "the improper solicitation of any legal or professional business." 371 U.S. at 419. The Court held that the statute was unconstitutional, insofar as it chilled NAACP lawyers and members from advising others of their legal rights, recommending litigation, or appearing in litigation supported by NAACP funds. Id. at 434. The Court found that the NAACP and its members were exercising their First Amendment rights to expression and association by "assisting persons who seek legal redress for infringements of their constitutionally guaranteed rights," and that these activities constituted a form of "political expression." Id. at 428–29. The Court struck down the Virginia statute because the state failed to show "a compelling state interest" justifying the statute's limits on First Amendment freedoms. Id. at 438–39.

---

[6] The FAC includes two First Amendment claims: first, that Licensing Condition One is an impermissible regulation on his modes of expression and association, and second, that it is a prior restraint on his protected expression. See FAC ¶¶ 84–89. Medina does not press the prior restraint claim in support of his Motion, and so the Court does not address it here. See MPI at 19–20 (arguing only expression and association claim).

17

Here, much of Medina's conduct at the Café is unlikely to be expressive, in contrast to the NAACP's conduct in Button. See Feldman v. Arizona Sec. of State's Office, 843 F.3d 366, 386 (9th Cir. 2016) ("First Amendment protection extends 'only to conduct that is inherently expressive.'"). And some of his conduct at the Café is purely social. The Nevada Supreme Court explained in Spilotro v. Nevada Gaming Commission, 99 Nev. 187, 193 (1983), that "[t]he First Amendment protects the freedom to associate for the promotion of political and social ideas, not association purely for social or economic purposes." Nevertheless, Medina engages in some political, cultural, and philanthropic association at the Café. See, e.g., FAC ¶¶ 48–53. The question is whether License Condition One impermissibly burdens that association.

The Court agrees with the defendants that "such a modest restriction in the gambling regulation context fails to violate the First Amendment." See Opp'n at 21. In Spilotro, the Nevada Supreme Court examined an order of the Nevada Gaming Commission placing the appellant on a list of persons to be excluded from all gaming establishments in the state. 99 Nev. at 189. The court concluded that "[e]ven if some First Amendment right were incidentally affected," "[l]isted persons are excluded only from gaming establishments . . . and exclusion is an appropriate means of protecting the State's paramount interest in maintaining public confidence and trust in the gaming industry."[7] This analysis is consistent with the analysis courts use in more traditional freedom of association cases: identifying the burden imposed on voters by election laws, identifying the state's justification, and weighing the burden against the state's justification. See, e.g., Feldman, 843 F.3d at 387. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to

---

[7] Medina's response, that Spilotro actually supports his position, is unpersuasive. See Reply at 9–10. Medina argues that he should have received notice and a hearing, like the appellant in Spilotro, and as envisioned by California Business and Professions Code section 19844. Id. at 10. The Court addressed this procedural due process argument above; the argument does not meaningfully impact Medina's First Amendment claim.

18

justify' the regulations." Id. (quoting Burdick v. Takushi, 504 U.S. 428, 434 (1992)); see also NAACP v. Claiborne Hardware Co., 458 U.S. 886, 912 (1982) ("Governmental regulation that has an incidental effect on First Amendment freedoms may be justified in certain narrowly defined instances."); Cal. Medical Ass'n v. FEC, 641 F.2d 619, 629 (9th Cir. 1980) ("The minimal nature of the statutory constraints, taken together with the importance of the governmental interest to be served by the regulation, operate to sustain the constitutionality of the provision in question.").

Here, License Condition One does not prohibit Medina from engaging in any "mode of expression or association," or from engaging in any particular political, cultural, or philanthropic causes. It does not bar him from all gaming establishments in California, from joining or engaging with a political party, or from attending Filipio-American group gatherings. It prohibits Medina from associating for any reason at one public restaurant, Café Colma (as well as at the other non-gaming areas of the Casino, none of which are at issue, see FAC ¶¶ 48–53). That leaves Medina free to engage in any form of political, cultural, and philanthropic expression outside of Café Colma. While this burdens Medina's First Amendment rights, and does not seem likely to prevent him from engaging in all prohibited activity in this age of cell phones and email, it is less intrusive than the order in Spilotro, or the statute in Button. The government has a "strong . . . interest in certain forms of economic regulation, even though such regulation may have an incidental effect on rights of . . . association." See Claiborne Hardware Co., 458 U.S. at 912. It has an interest in protecting the public trust and confidence through comprehensive regulation of gambling. See Cal. Bus. & Prof. Code § 19801(h). The state's interest in regulating casinos likely justifies the minimal intrusion on Medina's rights.

Accordingly, Medina has failed to establish a likelihood of success on the merits for his First Amendment "modes of expression and association" claim.

## IV. CONCLUSION

Medina has failed to demonstrate that he is likely to succeed on the merits of any of his claims. "Because it is a threshold inquiry, when a plaintiff has failed to show the

19

likelihood of success on the merits, we need not consider the remaining three [Winter elements]." Garcia, 786 F.3d at 740 (internal quotation marks omitted). The Court therefore concludes that Medina is not entitled to a preliminary injunction. See Winter, 555 U.S. at 20.

For the foregoing reasons, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: October 24, 2018

CHARLES R. BREYER
United States District Judge